IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES EDWARD GREEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-22-294-SM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Charles Edward Green (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 13, 14.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because the Administrative Law Judge (ALJ) erred by "fail[ing] to attach res judicata to the previous claim and performed a de facto reopening of the claim" and also erred by crafting a

---

[1]     Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

residual functional capacity[2] (RFC) determination that "does not contain the proven limitations deriving from all of [Plaintiff's] impairments." Doc. 25, at 4.[3] For the reasons explained below, the Court affirms the Commissioner's decision.

I.  **Administrative determination.**

A.  **Disability standard.**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

---

[2]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

[3]  Plaintiff withdrew his third claim of error. Doc. 28, at 5.

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C.     Relevant findings.

#### 1.     Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 13-14; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since June 5, 2019, the amended alleged onset date;

(2)   has the following severe impairments: diabetes, degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, degenerative joint disease of the bilateral knees, obesity, gastritis, and a tear of the supraspinatus tendon;

(3)     has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment;

(4)     has the RFC to perform light work with the following additional limitations: he can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently reach with his right upper extremity and occasionally reach overhead with his right upper extremity; can frequently handle and finger bilaterally; should avoid concentrated exposure to extreme temperatures and vibration; and can occasionally push and pull a maximum of ten pounds with his arms and legs;

(5)     is unable to perform any past relevant work;

(6)     can perform jobs that exist in significant numbers in the national economy, including information clerk, storage facility rental clerk, and office helper; and

(7)     has not been under a disability from June 5, 2019, through August 18, 2021.

*See* AR 14-24.

## 2. Appeals Council's findings.

The Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (quoting *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart,* 385 F.3d 1268, 1270 (10th Cir. 2004)).

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the

5

Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B. Plaintiff's argument that the ALJ reopened a prior agency decision fails.

Plaintiff previously filed a claim for disability insurance benefits, which was denied in January 2017. AR 56-97, 99, 113. Plaintiff claims the ALJ "failed to attach *res judicata* to the previous claim and performed a de facto reopening of the claim" by "refer[ing] much of the evidence from the previous decision in

6

the decision at bar." Doc. 25, at 8. Defendant argues this claim is "cursory and underdeveloped." Doc. 26, at 7. The Court agrees.

Plaintiff does not explain how the purported reopening of his previous claim harmed him. Indeed, Plaintiff does not even explain exactly what of the previous claim's evidence the ALJ relied on here.

For support, Plaintiff cites *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). Doc. 25, at 8. There, the court held that an ALJ had reopened two previous ALJs' decisions, determining they "had mischaracterized [the claimant's] educational level as 'limited,' when it was actually 'marginal.'" *Wolfe*, 86 F.3d at 1079. The court then explained that when "an ALJ has reopened a prior decision, [the court has] jurisdiction to review the prior decision to the extent that it has been reopened" and "to determine if the Secretary's denial of disability is supported by substantial evidence." *Id. Wolfe* is not binding on this Court. Even if it were, Plaintiff does not ask the Court to review the previous, purportedly reopened decision.

Instead, Plaintiff's only grievance is that the ALJ "failed to discuss and explain the reopening and decide the prior claim." Doc. 25, at 8 (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Although Plaintiff does not point to specific records, generally speaking, it was not improper for the ALJ to

consider records from the prior period of alleged disability in assessing this claim. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of [the plaintiff's] case record, and should have been considered by the ALJ."); *Frost v. Saul*, No. CIV-19-444-J, 2020 WL 68586, at *3 (W.D. Okla. Jan. 7, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered."). Thus, the Court does not find that the second decision amounts to a de facto reopening of the first decision.

### C. Substantial evidence supports the ALJ's RFC assessment, as the ALJ properly considered Plaintiff's non-severe impairments.

Plaintiff claims that in crafting the RFC assessment the ALJ improperly relied on her Step-Two finding that Plaintiff's mental impairments were non-severe, without further considering the impact of the mild limitations on his ability to work. Doc. 25, at 4-7; *see also* Doc. 28. Specifically, Plaintiff suggests the ALJ did not adequately consider his history of anxiety and depression, pointing to evidence that "he has a history of anxiety at least since March 2014,

8

and has developed depression, for which he has received multiple psychogenic medications." Doc 28, at 5.

At Step Two of the sequential analysis, the ALJ evaluates the severity of a claimant's mental impairments using the "paragraph B" criteria, 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520a(a); *see also Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013). When assessing the claimant's RFC, "the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not." *Wells*, 727 F.3d at 1069; *see also* 20 C.F.R. § 404.1545(a)(2)).

The "paragraph B" severity determination at Step Two is not a substitute for the later RFC assessment. *Wells*, 727 F.3d at 1065; SSR 96-8p, 1996 WL 374184, at *4. Rather, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ applied the "paragraph B" criteria at Step Two, *see* 20 C.F.R., Part 404, Subpart P, Appendix 1, and found Plaintiff's mental impairments to be non-severe, as they produce "no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that

9

there is more than a minimal limitation in the claimant's ability to do basic work activities." AR 16. She found mild limitation in interacting with others and in concentrating, persisting, or maintaining pace. *Id.* at 15-16. And the ALJ found no limitation in understanding, remembering, or applying information or in adapting or managing himself. *Id.* Later, in determining Plaintiff's RFC, the ALJ found that these non-severe impairments did not warrant any additional restrictions in Plaintiff's RFC. *Id.* at 18.

In assessing Plaintiff's RFC, the ALJ extensively considered Plaintiff's non-severe mental limitations:

> Additionally, the undersigned considered the prior administrative findings of the state agency psychological consultants. These doctors found that the claimant's mental impairments were non-severe. As with the medical consultants, the psychological consultants' findings deserve consideration as these doctors have a high level of understanding of the Social Security disability program and enjoy a review of all the available evidence in the record when forming their conclusions. The undersigned finds the conclusions persuasive. The conclusions are supported by the examiners' detailed summary and analysis of records reviewed, and they are consistent with records submitted after they reviewed the file. *The claimant's mental health treatment is limited/conservative. The claimant receives medication from his primary care physician for anxiety/depression, and PHQ9 scores indicate his depression is mild in nature. He does not participate in counseling/therapy. Mental status examination is regularly intact including intact insight/judgement, normal cognitive function, good eye contact, cooperative behavior, and full range mood/affect.*

AR 20-21 (emphasis added) (internal citations omitted).

The ALJ expressly considered Plaintiff's history of "conservative" treatment for anxiety and depression—including medication—before examining how his "mild" limitations manifest in demeanor and affect—including "intact insight/judgement, normal cognitive function, good eye contact, cooperative behavior, and full range mood/affect." AR 21. The ALJ also found the state agency psychological consultants' opinion persuasive. *Id.* So the Court disagrees that the ALJ considered the evidence of Plaintiff's mental health impairments "silently and without any explanation." *See* Doc. 28, at 3-4 (quoting *Wilson v. Astrue*, No. CIV-08-555-D, 2009 WL 523174, at *3 (W.D. Okla. Feb. 27, 2009)); *see also Roybal v. Kijakazi*, No. CIV-20-1013-STE, 2021 WL 4942822, at *6 (W.D. Okla. Oct. 22, 2021) (concluding that "the ALJ's decision does not reflect the type of conflation of the step two and step four determinations criticized in *Wells*" where the ALJ determined at Step Two that the plaintiff had "no more than a mild impairment in any of the four functional areas" and then, "in determining the RFC, . . . considered the state agency psychological consultants' opinions that Plaintiff had no mental limitations in the B criteria," as well as Plaintiff's testimony about his mental limitations).

To the extent Plaintiff argues the ALJ should have reached a different conclusion based on his activities of daily living as described by his mother and

11

his reported inability to maintain the pace needed to work for his cousin, *see* Doc. 28, at 5, it was the ALJ's prerogative to determine whether those reports are consistent with the medical evidence. *See Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding no error where ALJ failed to include RFC limitations "belied by the medical record"). The ALJ found Plaintiff's mother's "statements . . ., like the claimant's, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR 20. The Court may not reweigh this evidence or substitute its judgment for the Commissioner's. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff argues the ALJ's decision is ambiguous because she included the following language to explain the relationship between the RFC and the "paragraph B" criteria for evaluating the severity of mental disorders at Step Two:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity

12

>assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. *The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.*

AR 16 (emphasis added); *see also* Doc. 25, at 5.

In support of his argument, Plaintiff cites *Bond v. Astrue*, No. CIV-10-452-F, 2011 WL 2532967, at *6 (W.D. Okla. May 26, 2011), *adopted*, 2011 WL 2518860 (W.D. Okla. June 24, 2011), in which the Court found the challenged language to be ambiguous. The ambiguity arose because "[t]he emphasized language suggest[ed] the ALJ's RFC assessment incorporate[d] the mild limitations . . . set forth in the paragraph B criteria," while, "[c]onversely, it [was] possible, the ALJ's intent was to find no mental functional limitations as ultimately expressed in the RFC." *Bond*, 2011 WL 2532967, at *6. Succinctly, "it [was] not clear whether the ALJ intended mental limitations to be included in the RFC." *Id.* Here, though, the RFC is not ambiguous. After detailing Plaintiff's mental limitations and considering the "entire record," the ALJ concluded that "the weight of the evidence does not suggest that he has additional limitations beyond those identified in the residual functional capacity statement." AR 18, 21.

13

The Court finds that substantial evidence supports her RFC determination.

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 24th day of February, 2023.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE